UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN W. SWEET, JR., | ) |
| | ) |
|   Plaintiff, | ) |
| | ) |
|     vs. | )   CAUSE NO. 1:11-cv-843-WTL-DKL |
| | ) |
| INDIANAPOLIS JET CENTER, INC., et al., | ) |
| | ) |
|   Defendants. | ) |

### ENTRY REGARDING MOTIONS TO DISMISS

This cause is before the Court on two motions to dismiss, one filed by Defendants Comlux Avations Services, LLC, Comlux America, LLC, and Comlux the Aviation Group (referred to collectively herein as "the Comlux Defendants") (dkt. no.101) and the other by Defendants Indianapolis Jet Center, Inc., and Randy Keeker ("the IJC Defendants") (dkt. no. 104). Both of the motions are fully briefed and the Court, being duly advised, **GRANTS IN PART AND DENIES IN PART** each motion to the extent and for the reasons set forth below.

### I. MOTION TO DISMISS STANDARD

The Defendants move to dismiss the Plaintiffs' Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Complaint fails to state a claim for which relief can be granted. In reviewing a Rule 12(b)(6) motion, the Court "must accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. National Collegiate Athletic* Ass'n, 638 F.3d 328, 334 (7th Cir. 2012). For a claim to survive a motion to dismiss for failure to state a claim, it must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (omission in original). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Agnew*, 638 F.3d at 334 (citations omitted). A complaint's factual allegations are plausible if they "raise the right to relief above the speculative level." *Bell Atlantic Corp v.*

*Twombly*, 550 U.S. 544, 556 (2007).

## II. BACKGROUND

The allegations in Plaintiff John Sweet's Third Amended Complaint are as follow.

Sweet began working for Defendant Indianapolis Jet Center, Inc. ("IJC") in September 2006. Sweet's title was as Vice President in Charge of Avionic Sales and Service. Defendant Randy Keeker was at that time the owner and president of IJC. Although IJC was based in Indiana, Sweet worked from his home in Texas.

During a convention in 2007, Sweet was approached and asked if Keeker might consider selling his company. Sweet facilitated contact between Keeker and the potential buyer. Worried that a new owner would require him to relocate to Indiana, Sweet accepted an offer of employment from a Texas-based company in August 2008 and notified Keeker that he would be leaving his job at IJC. In response, Keeker offered Sweet a six-year employment contract if he would agree to remain at IJC. On August 27, 2008, Sweet and Keeker, on behalf of IJC, executed a document (hereinafter referred to as "the Agreement") which read as follows:

> This agreement is entered into by John Sweet (employee) and Indianapolis Jet Center, Inc. (IJC). IJC has agreed to employee John for annual salary of $165,000.00/annually plus full benefits. He works primarily from his home office and travels as needed. This will continue for the remainder of the 6 year term.
>
> In the event that IJC is partially or fully acquired by another company this agreement will remain in effect and be legally binding for John and the entity assuming control. If however they choose not to abide by the terms then the remaining contract will be purchased for the balance of the remainder of the 6 year term.
>
> The above is agreed upon by John Sweet (Employee) and Indianapolis Jet Center, Inc. (IJC) and signed by both parties, John Sweet as Employee and Randy Keeker as President Indianapolis Jet Center., Inc.

Sweet then withdrew his acceptance of the job offer from the Texas company.

IJC was, in fact, sold to Comlux Aviation[1] in the fall of 2008. After the sale, Sweet

---

[1] Sweet does not specify in his Third Amended Complaint which of the three Comlux Defendants—Comlux Aviation Services LLC, Comlux America LLC, or Comlux the Aviation

continued to perform the same work as he had for IJC prior to the sale and Comlux continued to pay him the same salary. Keeker became an executive vice president for Comlux, and IJC's employees were integrated into Comlux's workforce.

In August 2009, Comlux asked Sweet to accept a decrease in his annual salary from $165,000 to $120,000. Sweet was told that the cut would be temporary and the difference would be paid to him upon completion of a large sale or upon his departure from Comlux. In Janaury 2010, Sweet's title was changed; he was told the change was made "for corporate political reasons." Finally, in October 2010, Comlux told Sweet that his salary would be reduced to $65,000 annually unless he would agree to relocate to Indianapolis. Unwilling to do so, Sweet resigned in January 2011.

### III. DISCUSSION

Both the IJC Defendants and the Comlux Defendants move to dismiss the claims asserted against them in the Third Amended Complaint. Each of the Defendants' arguments is addressed, in turn, below.

#### A. Count I: Declaratory Judgment

In Count I, Sweet asks the Court to enter declaratory judgment as follows:

- The Agreement is "a legally binding contract."
- The Comlux Defendants, as successor to IJC, are "legally bound by" the Agreement.
- The Agreement "modifies Plaintiff's 'at-will' status of employment."
- The Defendants "are not entitled, under the terms of the [Agreement], to reduce Plaintiff's salary or job title until complete performance of the [Agreement] has

---

Group—he is referring to when he refers to "Comlux Aviation" and "Comlux," and the Defendants also do not distinguish between the various Comlux entities in their briefs. Because the distinction is irrelevant to the issues raised by the instant motions, the Court will follow the parties' lead and simply refer to "Comlux."

occurred.

Third Amended Complaint at ¶ 42.  All of the Defendants argue that the Court should exercise its discretion to decline to consider Sweet's request for declaratory judgment because it is wholly subsumed by his claim for breach of contract.  The Court agrees.  The declaratory relief sought by Sweet would add nothing to the relief he will be entitled to if he ultimately is successful in his breach of contract claim.  Likewise, Sweet would gain nothing by obtaining the declaratory relief he seeks if he ultimately loses his breach of contract claim.  Accordingly, Count I adds nothing of substance to this case and is **dismissed**.

### B.  Count II:  Breach of Contract

Sweet asserts a breach of contract claim against all of the Defendants.   The Defendants advance various reasons why the claim must fail, each of which is addressed, in turn, below.

#### 1. *The Existence of an Enforceable Employment Contract between Sweet and IJC*

In Indiana, "[t]he general rule is that, in order to be found valid and enforceable, an employment contract must contain four terms: 1) it must state the place of employment; 2) it must state the period of employment; 3) it must state the nature of the services the employee is to render; and 4) it must state the compensation the employee was to receive." *Majd Pour v. Basic American Medical, Inc.*, 512 N.E.2d 435, 439 (Ind. App. 1987).  The Defendants argue, and the Court agrees, that the Agreement does not "state the nature of the services" Sweet was to perform.  However, the Court does not agree with the Defendants' conclusion that the omission of that term from the Agreement means that there was no enforceable employment contract between Sweet and IJC.

In *Majd Pour*, the plaintiff's claim was subject to dismissal on statute of limitations grounds if it was not based upon a written contract; therefore, the issue before the court was whether all of the terms necessary for an enforceable employment contract were contained within a letter sent by the defendant-employer to the plaintiff-employee.  *Majd Pour* does not stand for

the proposition that all employment contracts must be in writing in order to be enforceable, however. Rather, an employment contract, like any other contract, is subject to the statute of frauds, which provides that "'contracts which cannot be performed within one year must be in writing and signed by the party to be charged.'" *Tobin v. Ruman*, 819 N.E.2d 78, 84 (Ind. App. 2004) (quoting *Mehling v. Dubois County Farm Bureau Coop. Ass'n, Inc.*, 601 N.E.2d 5, 7 (Ind. App. 1992) and citing Ind. Code § 32–21–1–1). As the *Tobin* court noted, "the long-standing rule in Indiana as to when an oral contract falls within the Statute of Frauds" is as follows:

> It must affirmatively appear by the terms of the contract, that its stipulations are not to be performed within a year after it is made, in order to bring it within the provisions of the statute of frauds. The Statute of Frauds has always been held to apply only to contracts which, by the express stipulations of the parties, were not to be performed within a year, and not to those which might or might not upon a contingency, be performed within a year. The one year clause of the Statute of Frauds has no application to contracts which are capable of being performed within one year of the making thereof.

*Tobin*, 819 N.E.2d at 84-85 (citations omitted). "In construing the above, it is apparent that only if it is *impossible* for an oral contract to be completed within one year does it fall within the Statute of Frauds." *Id.* at 85 (emphasis in original).

In this case, the Agreement makes it clear that the parties contemplated a situation in which the contract would be completed within one year: if IJC were acquired by another company and that company chose not to be bound by the contract's terms. In that case, the Agreement provides that "the remaining contract will be purchased for the balance of the remainder of the 6 year term." In light of the fact that the existence of the contract was sparked by the fact that IJC was engaging in talks with a potential buyer, at the time the Agreement was executed it certainly was possible that such an acquisition would occur within a year.

Because the contract between IJC and Sweet could be completed within one year under the facts pled by Sweet, it does not fall within the Statute of Frauds and all of its essential terms did not have to be included in the written Agreement in order for it to be binding. The facts pled by Sweet demonstrate that it is plausible that he and IJC agreed to all of the necessary terms of an

employment contract even though at least one of the terms was not included in the written Agreement.  Accordingly, Sweet has adequately pled a breach of contract claim against IJC.

### 2. *The Enforceability of the Employment Contract against Keeker*

Defendant Keeker argues that Sweet has not pled any basis for his assertion that the employment contract is binding upon Keeker individually.  The Court agrees.  The Agreement expressly states that it is "entered into by John Sweet (employee) and Indianapolis Jet Center, Inc.," and Keeker signed the Agreement as the president of IJC.  Sweet has pointed to no facts that suggest that Keeker as an individual, rather than Keeker acting on behalf of IJC, entered into an agreement with Sweet.  Neither has Sweet articulated any theory under which Keeker can be held personally liable for any breach of the employment contract between Sweet and IJC.  Accordingly, the breach of contract claim against Keeker is **dismissed**.

### 3. *The Enforceability of the Employment Contract against the Comlux Defendants*

The Comlux Defendants move to dismiss the breach of contract claim against them on the ground that Sweet entered into an employment contract with IJC, not any of the Comlux entities.  Sweet argues in response that the Comlux's acquisition of IJC was a *de facto* merger and therefore the Comlux Defendants assumed the liabilities of IJC, including its contract with Sweet.  As the Indiana Supreme Court has recognized:

> Courts sometimes treat asset transfers as *de facto* mergers where the economic effect of the transaction makes it a merger in all but name. Some pertinent findings might include continuity of the predecessor corporation's business enterprise as to management, location, and business lines; prompt liquidation of the seller corporation; and assumption of the debts of the seller necessary to the ongoing operation of the business. *See, e.g., AT & S Transport. LLC v. Odyssey Logistics & Tech. Corp.*, 22 A.D.3d 750, 803 N.Y.S.2d 118 (2005); *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455 (3rd Cir. 2006); *Beals v. Washington Int'l, Inc.*, 386 A.2d 1156 (Del.Ch.1978).

*Cooper Industries, LLC v. City of South Bend,* 899 N.E.2d 1274, 1288 (Ind. 2009).  At this stage in the litigation, Sweet does not have to prove that a *de facto* merger occurred; rather, he need only have pled sufficient facts to raise the possibility that a *de facto* merger occurred beyond the

speculative level.[2]  He has satisfied that burden.  Accordingly, he has adequately pled a breach of contract action against the Comlux Defendants.[3]

### C.  Count III:  Unjust Enrichment

Sweet's unjust enrichment claim is based upon his allegation that he was "grossly underpaid" by the Defendants during the course of his employment and that the Defendants profited "from his unpaid and/or underpaid labor services and expertise." Third Amended Complaint at ¶ 50, 52.  Presumably Sweet is referring to the fact that Comlux unilaterally reduced his salary from $165,000 to $120,000 annually in August 2009.  The problem with Sweet's unjust enrichment claim is that it may be pursued only in the absence of a contract[4]—that is, only if Sweet has no valid and enforceable employment contract with the IJC Defendants and/or the Comlux Defendants—and in the absence of an employment contract Sweet was an at-will employee whose salary could be unilaterally reduced at any time.  *Eck & Assocs, Inc. v. Alusuisse Flexible Packaging, Inc.*, 700 N.E.2d 1163, 1167 (Ind. App. 1998).  The Court does not understand Sweet to allege that he was not paid what he was owed for work he performed prior to Comlux informing him of the pay-cut; rather, Sweet simply alleges that Comlux twice cut his pay prospectively in violation of their prior agreement to pay him $165,000 per year.  In the absence of an enforceable employment contract, it was Comlux's prerogative to do so under Indiana law.  Sweet's choice when presented with his new salary was to either accept it or resign.  *See Wheeler*

---

[2] The Comlux Defendants' arguments regarding novation and the assignment of personal services contracts are irrelevant if, in fact, a *de facto* merger occurred.

[3] Again, the parties have not distinguished between the various Comlux entities for the purposes of the instant motions, so the Court lumps them all together as well.

[4] "When the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law" such as unjust enrichment. *Zoeller v. East Chicago Second Century, Inc.*, 904 N.E.2d 213, 221 (Ind. 2009) (citations omitted).  The Court notes that the Comlux Defendants' argument, for which they cite *Zoeller,* that Sweet's unjust enrichment claim is "doomed" by his assertion that an express contract exists is without merit, as it ignores the fact that a plaintiff may plead contradictory legal theories in the alternative.  *See Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003) (Under the doctrine of pleading in the alternative, "a party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative.").

*v. Balemaster, Div. of East Chicago Mach. Tool Corp.*, 601 N.E.2d 447, 448 (Ind. App. 1992) ("This Court has held that, when an employer unilaterally changes agreed-upon employment terms, the employee may either (1) accept the changes and continue employment under the new terms or (2) reject the changes and quit work.").[5] Sweet alleges that the first time Comlux reduced his salary he chose the former option and continued working and the second time he chose the latter option and quit. Neither instance can be the basis of an unjust enrichment claim against the Defendants.[6] Accordingly, Sweet's unjust enrichment claim is **dismissed**.

### D. Count IV: Promissory Estoppel and Detrimental Reliance

In Count IV of his Third Amended Complaint, Sweet alleges the following:

- He was offered employment by a Texas company and tendered his resignation to IJC in order to accept that employment offer.

- In order to keep him in its employ, IJC offered him employment for a term of six years.

- In reliance on this promise, Sweet turned down the offer of employment from the Texas company and remained with IJC.

- Sweet "suffered significant economic and other damages as a result of his reliance on his contract with the Defendants."

Third Amended Complaint at ¶¶ 54-58.

Like his claim for unjust enrichment, Sweet's promissory estoppel claim is an alternative claim that may be asserted only in the absence of a valid and enforceable employment contract.

---

[5]Sweet complains that "Comlux is asking that this court to dismiss Sweet's claims based on issues of material fact as opposed to the form and substance of Sweet's pleadings." Sweet's Response to Comlux's Motion to Dismiss at 11. There is no issue of material fact, however, because under Indiana law Sweet either had an enforceable employment contract—which would preclude a claim for unjust enrichment—or he was an employee at will which, as explained above, would as a matter of law also preclude his claim.

[6]As the IJC Defendants point out, Sweet worked for Comlux at the time his salary was reduced; therefore, there does not seem to be any basis for an unjust enrichment claim against the IJC Defendants in any event.

8

*See Fiederlein v. Boutselis*, 952 N.E.2d 847, 857 ("Both claims of promissory estoppel and unjust enrichment permit recovery where no express contract or contract in fact exists.") (citing *Zoeller*, 904 N.E.2d at 220-21)).  In the event no employment contract exists, Sweet's employment with IJC was at-will and subject to being terminated at any time.  Under Indiana law, Sweet may not use a promissory estoppel claim to alter his at-will employment status:

> The doctrine of promissory estoppel may be available to an at-will employee, but the remedy is limited to damages actually resulting from the detrimental reliance and will not include the benefit of altering the employment status from an at-will relationship to a permanent one which requires just cause for termination. In contrast to the view arguably suggested by the language used by our Court of Appeals, we decline to authorize the use of promissory estoppel as a basis for general wrongful discharge damages.

*Jarboe v. Landmark Community Newspapers of Indiana, Inc.*, 644 N.E.2d 118, 121 (Ind. 1994). Rather, absent an enforceable contract, "the at-will employment relationship may be converted to a relationship in which the employer may terminate the employee only for good cause," but only in when the employee "provide[s] adequate independent consideration."  *Wior v. Anchor Indus., Inc.*, 669 N.E.2d 172, 175 (Ind. 1996).

The facts pled by Sweet do not plausibly suggest that such adequate independent consideration exists in this case.  Rather, Sweet alleges only that he gave up the job he was offered by the Texas company.  That is, as a matter of law, insufficient.  *Id.* at 176 (citing *Ohio Table Pad Co. of Ind., Inc. v. Hogan*, 424 N.E.2d 144, 146 (Ind. App. 1981).  Accordingly, Sweet's promissory estoppel claim must be **dismissed**.

### E.  Count V:  Fraudulent Misrepresentation

Sweet asserts a claim of fraudulent misrepresentation against IJC and Keeker based upon Keeker's false representation to Sweet that Comlux had agreed to be bound by the terms of the Agreement after the sale of IJC to Comlux.  Sweet alleges that he relied upon that misrepresentation to his detriment because he "remained as Defendants' employee and gave up a job in Texas."  Third Amended Complaint at ¶ 64.  The other factual allegations made by Sweet

9

belie this one, however. Sweet alleges that it was his acceptance of the Agreement in late August 2008 that "precluded him from permanently accepting" the Texas company's offer. Third Amended Complaint at ¶ 57. At the time the Agreement was executed, as the terms of the Agreement make clear, the purchase of IJC by Comlux had not yet been negotiated and the parties expressly anticipated that any future buyer of IJC might not agree to the terms of the Agreement. When Keeker represented to Sweet that Comlux had agreed to accept the terms of the Agreement Sweet had, on reliance on the terms of the Agreement, already turned down the Texas job. In essence, Sweet has pled himself out of court with regard to his fraud claim. *See, e.g.*, *Atkins v. City of Chicago,* 631 F.3d 823, 832 (7th Cir. 2011) (plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim"). Count V is, accordingly, **dismissed**.

### F. Count VI: Indiana Statutory Wage Claim

Finally, in Count VI Sweet asserts a claim against the Comlux Defendants for violation of Indiana Code 22-2-5-1, which provides that "[p]ayment shall be made for all wages earned to a date not more than ten (10) business days prior to the date of payment." Sweet alleges that after he resigned, the Comlux Defendants "fail[ed] to pay [him] his unpaid wages on or before his last scheduled pay period." Third Amended Complaint at ¶ 67. The factual basis for this claim is not entirely clear to the Court. However, the Comlux Defendants' argument that the claim should be dismissed is based upon their argument that Sweet was an at-will employee. Whether that argument will carry the day remains to be seen, as Sweet's breach of contract claim has survived the Defendants' motion to dismiss. Accordingly, the motion is **denied** as to Count VI as well.

### IV. CONCLUSION

For the reasons set forth above, the Defendants' motions to dismiss are **GRANTED IN PART** and the following claims in Sweet's Third Amended Complaint are **DISMISSED**: Count I (Declaratory Judgment) as to all Defendants; Count II (Breach of Contract) as to Defendant

Keeker only; Count III (Unjust Enrichment) as to all Defendants; Count IV (Promissory Estoppel) as to all Defendants; and Count V (Fraudulent Misrepresentation) as to the IJC Defendants. The motions to dismiss are **DENIED in all other respects**. The following claims therefore remain in this case: a breach of contract claim against all Defendants except Keeker (Count II) and an Indiana statutory wage claim violation against the Comlux Defendants (Count VI). As no claims remain against Defendant Keeker, he is **DISMISSED** from this case.

SO ORDERED:   01/14/2013

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification